United States District Court
Eastern District of Michigan
Northern Division

United States of America,

        Plaintiff,

                                    Case No. 1:25-cr-20850

v.

                                    Hon. Thomas L. Ludington

APPLIED PARTNERS, LLC,

        Defendant.

_____/

## Plea Agreement

The United States of America and the defendant, APPLIED PARTNERS, LLC, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

### 1.   Count of Conviction

The defendant will waive its right to an indictment and will plead guilty to Count 1 of the Criminal Information. Count 1 charges the defendant with a knowing violation of asbestos work practice standards under the Clean Air Act under 42 U.S.C. §§ 7412(h) and 7413(c)(1), and 18 U.S.C. § 2.

Page **1** of **20**

## 2.   Statutory Minimum and Maximum Penalties

The defendant understands that the count to which it is pleading guilty carries the following maximum statutory penalties:

| Count 1 | Fine: | $500,000, or twice the pecuniary gain or loss, 18 U.S.C. § 3571(d) |
| | Restitution: | As determined by the Court |
| | Probation: | 5 years |
| | Special Assessment: | $400 |

## 3.   Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the Environment & Natural Resources Section, Environmental Crimes Section, U.S. Department of Justice ("the government"), will not bring additional charges against the defendant, or individuals owning, managing, or working for or on behalf of the defendant at the time of the offense, for Clean Air Act violations by the defendant that occurred before the date of this agreement and of which the government is aware by the date of this agreement.

### 4.   Elements of Count of Conviction

The elements of Count 1 are:

First:    On or about the dates set forth in the Information, within the Eastern District of Michigan, the defendant was the owner or operator of a demolition activity at the former TRW Integrated Chassis Systems facility;

Second:   The facility contained at least 260 linear feet, 160 square feet, or 35 cubic feet of regulated asbestos-containing material;

Third:    The defendant knew that asbestos-containing material was in the facility;

Fourth:   The defendant knowingly performed acts and caused such acts to be performed, and knowingly failed to perform acts and caused such acts to not be performed, in violation of NESHAP work practice standards, in that the defendant failed to: (a) remove all regulated asbestos-containing material from a facility being demolished before any activity began that would break up, dislodge, or similarly disturb the material or preclude access to the material for subsequent removal; (b) adequately wet all regulated asbestos-containing material and ensure that it remained wet until collected and contained or treated in preparation for disposal; (c) carefully lower all regulated asbestos-containing material to the ground and floor, not dropping, throwing, sliding, or otherwise damaging or disturbing the material; and (d) have an on-site representative trained in the provisions of asbestos regulations at the facility during asbestos stripping, removal, handling, or disturbing operations.

42 U.S.C. §§ 7412(h) and 7413(c)(1).

## 5. Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

1. Defendant APPLIED PARTNERS, LLC, ("APPLIED PARTNERS") is an LLC that was incorporated in Delaware .

2. The former TRW Integrated Chassis Systems facility (the "TRW Site" or "Site") is a defunct automotive brake system component plant located at 2328 East Genesee Avenue in Saginaw, Michigan, within the Eastern District of Michigan.

3. The Site is approximately 65 acres of land, with multiple structures, occupying space north of Harold Street, between East Genessee Avenue and Cumberland Street.

4. In or around summer 2018, APPLIED PARTNERS, in conjunction with a separate but related corporate entity called AP SAG, LLC, purchased the TRW Site with the intention of making a profit by demolishing and scrapping at least some of the existing structures before reselling the Site.

5. As part of the purchase, APPLIED PARTNERS received a copy of a Baseline Environmental Assessment, which included a 2006 asbestos survey detailing the type and quantity of asbestos-containing materials in each structure at the Site. At the time of APPLIED PARTNERS' purchase of the Site, at least four structures remained, including two manufacturing plants, an administrative building, and a structure known as the Power House.

6. The Power House was a multi-story brick building constructed in 1942. The structure contained two coal-fired boilers and one natural-gas fired boiler, which were used to provide heat and steam to the various plants and office complex when the TRW Site was operational. The upper floors of the Power House also contained three fly ash hoppers.

7. According to the 2006 survey, and as known, or should have been known, by agents or employees of APPLIED PARTNERS, the Power House contained 860 square feet of non-friable asbestos in cement board on the cooling towers/top floor, and the following quantities of friable asbestos in the following locations:

| Material | Condition | Asbestos | Quantity | Location |
|---|---|---|---|---|
| Boiler insulation on top of boilers | Friable | 25% chrysotile; 30-35% amosite | 1,800 sq ft | On boilers/ top floor |
| Preformed block line and fitting insulation | Friable | 20% chrysotile; 5% amosite | 350 ln ft | Front of boilers/ top floor |
| Fly ash hopper | Friable | 10% chrysotile | 1,500 sq ft | Cooling towers/ top floor |

8.    Friable asbestos-containing material was also noted on and around the exterior pipe rack connecting the Power House to Plant 3 in the following locations and quantities: Thermal cement fittings on fiberglass steam/condensate lines (approximately 15 fittings), Pre-Formed block line and fitting insulation on steam/condensate lines (approximately 660 linear feet), and Wrapped paper pipe insulation on domestic water lines (approximately 275 linear feet).

9.    In June 2019, in preparation to demolish the Power House, APPLIED PARTNERS contracted with Company A to survey only the first floor of the structure for asbestos-containing materials. In

September 2019, APPLIED PARTNERS contracted with Company A for abatement of 140 linear feet of asbestos-containing fittings that Company A had identified on the first floor of the Power House.

10.   A subcontractor of Company A completed the abatement on or about September 12, 2019. As known to APPLIED PARTNERS, none of the regulated asbestos-containing materials were abated from the upper floors of the Power House.

11.   During the limited abatement, APPLIED PARTNERS contracted with Company B to demolish the Power House, which would also include recovering any viable materials and components for sale by APPLIED PARTNERS.

12.   On September 17, 2019, APPLIED PARTNERS told Company B that abatement was complete and that Company B could begin demolition.

13.   Company B, as known to APPLIED PARTNERS, performed all steps of the demolition without having a representative trained in the provisions of asbestos regulations on-site.

14.   Between September 19, 2019, and October 24, 2019, with APPLIED PARTNERS' knowledge, Company B used machinery to break apart the

brick walls of the Power House and pull down large facility components covered in asbestos-containing material from the upper floors.

15. During the demolition, and with APPLIED PARTNERS' knowledge, Company B did not wet any asbestos-containing material.

16. During the demolition, and with APPLIED PARTNERS' knowledge, Company B caused a hopper, covered in asbestos-containing material, to drop from the upper levels of the Power House. Company B dragged the hopper to the northern side of the Site and left other debris, including asbestos-containing materials, scattered in and around the footprint of the Power House.

17. APPLIED PARTNERS and Company B ceased demolition operations on or between October 21, 2019, and October 24, 2019, concurrent with inspectors from the Michigan Department of Environment, Great Lakes, and Energy ("MI EGLE") visiting the Site and collecting samples from the debris of suspected asbestos-containing materials.

18. At that point and at APPLIED PARTNERS' direction, Company B had demolished the Power House to the I-beams on the lower half and all of the exterior pipe rack connecting the Power House to Plant 3 had been

taken down and cut up for scrap or disposal. And, though demolition work had been done on the upper half, the brick exterior remained intact.

19.    When the samples returned positive for asbestos, MI EGLE told Company B and APPLIED PARTNERS that demolition work could not restart until APPLIED PARTNERS properly abated the Site.

20.    In November 2019 additional sampling was done at the Site, including samples from the exterior of the fallen hopper and from debris around the Power House. Testing using Polarized Light Microscopy confirmed the presence of over 160 square feet of regulated asbestos-containing materials, specifically of friable materials containing more than one percent (1%) asbestos.

21.    For purposes of this plea, Michael Cenit is an authorized representative of Applied Partners, LLC. Specifically, in a document entitled "Unanimous Written Consent of the Members of Applied Partners, LLC in Lieu of a Meeting," as of December 10, 2025, the LLC "authorized, empowered, and directed" Michael Cenit to "execute the agreement" and to "enter the guilty plea to Count 1 of the Information." The LLC further "authorized, empowered, and directed" Michael Cenit to "appear on the Company's behalf at sentencing."

### 6.     Advice of Rights

The defendant has read the Information, has discussed the charges and possible defenses with its attorney, and understands the crime charged. The defendant understands that, by pleading guilty, it is waiving many important rights, including the following:

A.     The right to plead not guilty and to persist in that plea;

B.     The right to a speedy and public trial by jury;

C.     The right to be represented by counsel at trial and every other stage of these proceedings;

D.     The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.     The right to confront and cross-examine adverse witnesses at trial;

F.     The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

G.     The right to compel the attendance of witnesses at trial.

### 7.     Collateral Consequences of Conviction

The defendant understands that its conviction also could result in additional administrative sanctions such as suspension, debarment, and listing to restrict rights and opportunities of the defendant to contract with or receive benefits, loans, permits, or assistance from agencies of the

United States. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be.

## 8.    Defendant's Sentencing Factors

### A.    Court's Determination

The parties acknowledge that the determination of a fine amount in this case is governed by 18 U.S.C. §§ 3553 and 3572. *See* USSG § 8C2.1 (Commentary, Background) and 8C2.10. The parties acknowledge that the maximum possible fine for violating the count to which the defendant is pleading guilty is the greater of (1) $500,000; or (2) twice the gross pecuniary gain or loss. 18 U.S.C. § 3571(c), (d), and (e). The determination of a term of probation is governed by USSG § 8D1. The Court will determine the defendant's sentence after consideration of those provisions.

### B.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the recommendations or factual stipulations in paragraphs 5 and 9.A.

Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's sentence.

## C.  Not a Basis to Withdraw

The defendant understands that it will have no right to withdraw from this agreement or withdraw its guilty plea if it disagrees, in any way, with the sentence determined by the Court, even if that sentence does not incorporate the parties' recommendations or factual stipulations in paragraphs 5 and 9.A. The government likewise has no right to withdraw from this agreement if it disagrees with the sentence determined by the Court.

## 9.  Imposition of Sentence

### A.  Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties jointly recommend the following sentence:

a.  Fines. The parties stipulate and agree to a total fine of $500,000. The parties stipulate and agree that this amount shall be paid before the time of sentencing.

b.  Probation. The parties stipulate and agree that the defendant shall be sentenced to a term of organizational probation for a

period of two (2) years with the following specific conditions imposed in addition to the standard conditions:

i.  No Further Violations. The defendant agrees that it shall commit no further significant violations (as determined by the Court), which have not been remedied to the maximum extent possible within ten (10) days of the defendant being notified of the violation, of federal, state, or local law or regulations. The term "further significant violations" does not include any violations where the underlying act or omission occurred prior to this plea agreement.

ii. Notification of corporate changes. During the term of probation, the defendant shall notify the United States Probation Office for the Eastern District of Michigan of any corporate name change or any other change in corporate structure or governance that would materially affect this agreement and/or the sentence imposed, within 30 days of such change. No change in name, business reorganization, merger, change of legal status, or similar action or event shall alter the defendant's responsibilities under this

agreement. The defendant agrees that it shall not knowingly engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

## B. No Right to Withdraw

The government's recommendation in paragraph 9.A is not binding on the Court. The defendant understands that it will have no right to withdraw from this agreement or withdraw its guilty plea if the Court decides not to follow the parties' recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the parties' recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

## C. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. There is no recommendation or agreement on restitution; the government asserts that in or around July 2025, the government sent letters to known potential asbestos exposure victims who worked on the demolition activities detailed in paragraph 5. As of

the signing of this agreement, no individuals have identified themselves as victims or requested restitution. The parties agree that the government shall provide all known potential asbestos exposure victims with notice of any plea or sentencing hearing. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

### D.    Special Assessment

The defendant understands that it will be required to pay a special assessment of $400, due immediately upon sentencing.

### 10.    Appeal Waiver

The defendant waives any right it may have to appeal its conviction on any grounds. If the defendant's sentence of probation does not exceed

five years, the defendant also waives any right it may have to appeal its sentence on any grounds.

## 11.   Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right it may have to challenge its conviction or sentence by collateral review, including, but not limited to, any right it may have to challenge its conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12.   Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw its guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the

government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives its double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives its right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

### 13. Use of Withdrawn Guilty Plea

The defendant agrees that if it is permitted to withdraw its guilty plea for any reason, it waives all of its rights under Federal Rule of Evidence 410, and the government may use its guilty plea, any statement that the defendant made at its guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

### 14. Parties to Plea Agreement

This agreement does not bind any government agency except the Environment & Natural Resources Division, Environmental Crimes Section, U.S. Department of Justice.

### 15. Corporate Authorization

No later than 5 days prior to entry of the plea, the defendant will provide to the Court and the government a corporate resolution authorizing the entry of a plea of guilty to Count 1 of the Information, and compliance with all provisions of this Agreement, and that the defendant's designated representative is authorized to appear on behalf of the defendant to enter the guilty plea in the Eastern District of Michigan and appear for imposition of the sentence.

### 16. Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the

defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

ADAM GUSTAFSON
Principal Deputy Assistant
Attorney General
Environment & Natural Resources Division

_____

Rachel M. Roberts
Trial Attorney
Environmental Crimes Section
150 M Street NE
Washington, DC 20002

Dated: 12/17/2025

Page **19** of **20**

By signing below, the defendant and its attorney agree that the defendant has read or been read this entire document, has discussed it with its attorney, and has had a full and complete opportunity to confer with its attorney. The defendant further agrees that it understands this entire document, agrees to its terms, has had all of its questions answered by its attorney, and is satisfied with its attorney's advice and representation.

_____
Matthew Borgula
Attorney for Applied Partners,
LLC, Defendant

_____
Applied Partners, LLC by
Michael Cenit, Duly Authorized
Representative for
Applied Partners, LLC
Effective December 10, 2025, by
Unanimous Written Consent of
Members
Defendant

Dated: